**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VLADIMIR GUSINSKY REV. TRUST, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CA, INC., MICHAEL P. GREGOIRE, JENS ALDER, RAYMOND J. BROMARK, JEAN M. HOBBY, ROHIT KAPOOR, JEFFREY G. KATZ, KAY KOPLOVITZ, CHRISTOPHER B. LOFGREN, RICHARD SULPIZIO, LAURA S. UNGER, and ARTHUR F. WEINBACH, <br><br> Defendants. | Case No. _____ <br><br> CLASS ACTION <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by its undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on July 11, 2018 (the "Proposed Transaction"), pursuant to which CA, Inc. ("CA" or the "Company") will be acquired by Broadcom Inc. and its wholly-owned subsidiary, Collie Acquisition Corp. (together, "Broadcom").

2. On July 11, 2018, CA's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Broadcom. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by CA's shareholders and completed, CA's stockholders will receive

$44.50 in cash for each share of the CA common stock they hold.

3. On July 24, 2018, defendants filed a preliminary proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of CA common stock.

9. Defendant CA is a Delaware corporation and maintains its principal executive offices at 520 Madison Avenue, New York, New York 10022. CA's common stock is traded on

the NasdaqGS under the ticker symbol "CA." CA is a party to the Merger Agreement.

10. Defendant Michael P. Gregoire ("Gregoire") is the Chief Executive Officer ("CEO") and a director of CA.

11. Defendant Jens Alder ("Alder") is a director of CA.

12. Defendant Raymond J. Bromark ("Bromark") is a director of CA.

13. Defendant Jean M. Hobby ("Hobby") is a director of CA.

14. Defendant Rohit Kapoor ("Kapoor") is a director of CA.

15. Defendant Jeffrey G. Katz ("Katz") is a director of CA.

16. Defendant Kay Koplovitz ("Koplovitz") is a director of CA.

17. Defendant Christopher B. Lofgren ("Lofgren") is a director of CA.

18. Defendant Richard Sulpizio ("Sulpizio") is a director of CA.

19. Defendant Laura S. Unger ("Unger") is a director of CA.

20. Defendant Arthur F. Weinbach ("Weinbach") is Chairman of the Board of CA.

21. The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of itself and the other public stockholders of CA (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23. This action is properly maintainable as a class action.

24. The Class is so numerous that joinder of all members is impracticable. As of July 6, 2018, there were 418,169,359 shares of CA common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

29. CA is one of the world's leading providers of information technology management software and solutions.

30. On July 11, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with Broadcom.

31. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is

4

approved by CA's shareholders and completed, CA's stockholders will receive $44.50 in cash for each share of the CA common stock they hold.

      32.      According to the press release announcing the Proposed Transaction:

> Broadcom Inc. (NASDAQ: AVGO), a leading semiconductor device supplier to the wired, wireless, enterprise storage, and industrial end markets, and CA Technologies (NASDAQ: CA), one of the world's leading providers of information technology (IT) management software and solutions, today announced that the companies have entered into a definitive agreement under which Broadcom has agreed to acquire CA to build one of the world's leading infrastructure technology companies.
>
> Under the terms of the agreement, which has been approved by the boards of directors of both companies, CA's shareholders will receive $44.50 per share in cash. This represents a premium of approximately 20% to the closing price of CA common stock on July 11, 2018, the last trading day prior to the transaction announcement, and a premium of approximately 23% to CA's volume-weighted average price ("VWAP") for the last 30 trading days. The all-cash transaction represents an equity value of approximately $18.9 billion, and an enterprise value of approximately $18.4 billion. . . .
>
> The transaction is expected to drive Broadcom's long-term Adjusted EBITDA margins above 55% and be immediately accretive to Broadcom's non-GAAP EPS. On a combined basis, Broadcom expects to have last twelve months non-GAAP revenues of approximately $23.9 billion and last twelve months non-GAAP Adjusted EBITDA of approximately $11.6 billion.
>
> As a global leader in mainframe and enterprise software, CA's solutions help organizations of all sizes develop, manage, and secure complex IT environments that increase productivity and enhance competitiveness. CA leverages its learnings and development expertise across its Mainframe and Enterprise Solutions businesses, resulting in cross enterprise, multi-platform support for customers. The majority of CA's largest customers transact with CA across both its Mainframe and Enterprise Solutions portfolios. CA benefits from predictable and recurring revenues with the average duration of bookings exceeding three years. CA operates across 40 countries and currently holds more than 1,500 patents worldwide, with more than 950 patents pending.
>
> Financing and Path to Completion
>
> Broadcom intends to fund the transaction with cash on hand and $18.0 billion in new, fully-committed debt financing. Broadcom expects to maintain an investment grade rating, given its strong cash flow generation and intention to rapidly de-leverage.

The transaction is subject to customary closing conditions, including the approval of CA shareholders and antitrust approvals in the U.S., the EU and Japan.

Careal Property Group AG and affiliates, who collectively own approximately 25% of the outstanding shares of CA common stock, have entered into a voting agreement to vote in favor of the transaction.

The closing of the transaction is expected to occur in the fourth calendar quarter of 2018.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

33. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

34. The Proxy Statement omits material information regarding the Company's financial projections as well as the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Qatalyst Partners LP ("Qatalyst").

35. With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate (a) unlevered free cash flow, (b) EBITDA, (c) non-GAAP operating income, and (d) non-GAAP diluted earnings per share; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

36. With respect to Qatalyst's Illustrative Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal value of CA; (ii) the estimated cash balance of CA as provided by Company management; (iii) the estimated debt outstanding of CA as provided by Company management; (iv) the estimated cash tax charges as provided by Company management; (v) the inputs and assumptions underlying the range of discount rates of 8.0% to 10.0%; (vi) management's basis for projecting a dilution factor of 3.7%; and (vii) the number of fully diluted shares of CA common stock outstanding.

37. With respect to Qatalyst's Selected Transactions Analysis, the Proxy Statement fails to disclose the total values of the transactions observed by Qatalyst in its analysis.

38. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

39. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the CA Board of Directors; (iii) The CA Board's Reasons for Approving the Merger Agreement and Recommending that Stockholders Adopt the Merger Agreement; (iv) Opinion of Qatalyst Partners LP; and (v) Certain Financial Projections.

40. The omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and CA**

41. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary

to make the statements therein not materially false or misleading. CA is liable as the issuer of these statements.

43. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

44. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

45. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

46. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

47. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

49. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of CA within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or

directors of CA and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

53. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 9, 2018

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com